IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

**FILED**
NOV 1 3 2012
JULIE A. RICHARDS, CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

CIVIL ACTION NO. 4:12-CV-00191-BR

JOHNNIE IVEY JOHNSON

    Plaintiff,

V.

PITT COUNTY SCHOOL501, et., Al.

    Defendant(s)

**Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss**

Comes now Johnnie Johnson (pro se) and hereby respond to the Defendants' answer. On a number of occasions, counsel for the Defendants has motioned that the Plaintiff's complaint be dismissed in pursuant to Rules 12(b)(1) (lack of subject matter jurisdiction); 12(b)(2) (lack of personal jurisdiction); 12(b)(4) (insufficient process); and 12(b)(5) (insufficient service of process). These motions seem to stem from Plaintiff's misnaming of the corporate entity of the Defendants as "Pitt Count Schools". This is to asked that these motions be Denied for the following reasons. 1) I, the Plaintiff, did not file this tort action against the individual defendants named in this case, but rather against their employer and my employer, better known to the Plaintiff as Pitt County Schools. This is the only name known to the Plaintiff as his employer. This name appears on every check, evaluation or letter of correspondence submitted to the Plaintiff by his employer and the employer of the named Defendants, which is one and the same. 2) Plaintiff filed this tort

claim pro se and had no way of knowing without legal counsel that under North Carolina law, the "Pitt County Board of Education" is the body corporate and the entity responsible for defending suit's brought against Pitt County Schools.. 3) All of the named Defendants (including the Superintendent), except for Jennifer Poplin (Principal of E. B. Aycock Middle School) works at the corporate office, at the same address as the Pitt County Board of Education, where they were served at 1717 West 5th Street, Greenville, NC 27834. 4) This is a matter reasonable enough to consider that non-lawyer pro se litigants are not to be held to the same standards as a practicing attorney. See Haines v. Kemer 914 F2d. 1459 (11th cir. 1990), also Hulsey v. Owens 63 F.3d 354 (5th cir. 1995). Hence, this is to petition the court to **amend** the correct name of the corporate entity of the Defendant in this case from "Pitt County Schools to "Pitt County Board of Education.

One a number of occasions, the Defendants also motion the court to dismiss this case in pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure citing that Plaintiff "failed to state a claim upon which relief can be granted". This motion should be Denied, as violations of the due process clause of the 14th Amendment to the Constitution and Title V11 Civil Right Act of 1964 on the basis of sex and retaliation are tort violations for which relief can be sought. The basis upon which this case was filed stems from the November 18, 2011 incident when Plaintiff's procedural due right was initially violated by Jennifer Poplin, an administrator for Pitt County Schools, when he was banned from providing his services as a substitute school teacher at E.B. Aycock middle School in Greenville, N.C. where he often worked. It is also stated a number of times that Plaintiff's claims are "vague and conclusory and fail to state facts sufficient to meet

plausibility standard required by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2004) and Ashcroft v. Iqbal 556 U.S. 602 (2009). (See page 2 of Defendants motion to dismiss). This is farthest from the truth and the Defendants' motion to dismiss on this ground should be Denied for the following reasons:

1) On page 5 of "Defendants' Memorandum of Law in Support of Motion to Dismiss." a reference is made to a letter written to me by one of the defendants, Glen Buck (exhibit E of Plaintiff's complaint), stating how Mr. Buck pointed out to him that he had "indeed been conferred with regarding being removal from the substitute teaching list, multiple times." This is true because Plaintiff only had 2 conferences with an administrator before his name was removed, one with Stan Adams (Assistant Principal) and Jennifer Poplin (Principal) regarding why his name was being removed the school's list for substitute teachers, but not for the reasons placed on the evaluation form submitted by the principal in making the request that be removed. As mentioned in the rebuttal letter Plaintiff wrote to Mr. Buck dated of March 4, 2012 (exhibit F), the main injustices Plaintiff felt the school board was directing his way with no intention of letting up is thoroughly explained. One of those injustices was the violation of his right to procedural due process of law when Ms. Poplin submitted and evaluation on him to request his name be taken off the sub list without conferring with him first regarding the reasons why. Plaintiff had only talked about the incident regarding the "Mexican" student incident of November 18th and nothing else. Matter of fact, she states in a message she left on Plaintiff's answering machine (that he still has) on or about December 7, 2011, that the November 18th incident regarding the "Mexican" student was NOT the reason she submitted the evaluation to request he be removed from the

school's sub list and stated that something else was brought to her attention after she spoke to him on November 18th is why she submitted the request. What that something was, was never discussed with Plaintiff prior to having his name removed from the school's list for substitute teachers, The basis of this tort claim is that she submitted an evaluation on him alleging he used the :"n" word and played uncensored music in a music class during an assignment he had earlier that week. Additionally, out of 9 evaluative indicators, only 3 are marked as "Meet Standard" on the evaluation form. Nor was Plaintiff conferred with concerning `any work performances that those "Below Standard" evaluative indicators represented This is unacceptable and clearly in violation to procedural due process of law in that Plaintiff was not given an opportunity to respond to any of the allegations regarding why his name was being removed from the sub list outside of the November 18th incident which is really "not" the reason.

2) According to the Pitt County Schools Handbook for Substitute Teachers (**which Plaintiff infers to be a contract**), principals are suppose to confer with the substitute regarding why an evaluation is to be submitted on them in requesting their name be taken off a school's substitute list. In the Principal's Responsibilities section of the handbook, item number 9 on page 11 (submitting now as Exhibit JJ into evidence) states that the principal is "to conference with the substitute personally about any concerns of the staff or about any problems encountered----that after at least one conference has taken place, the principal may request the removal of a substitute from his/her substitute list". Yet, at the bottom of the evaluation form, which is also displayed on page 17 of the handbook, the last indicator asks Yes ___ or No ___ (if the principal) "**Conferred with the substitute concerning the above problems on ___(Date)___ that occurred on**

**(Date)**. **(May not remove substitute from substitute list until after conference has been completed)**" See exhibit B in complaint.. The date that Ms. Poplin placed on the two blanks is November 18, 2011, to suggest she only conferred with Plaintiff regarding the alleged incident about the "Mexican" student. Not only is it documented in the message she left on Plaintiff's answering machine, but also in the fact that she did not check "Yes" on the evaluative indicator, indicating she had not discuss with Plaintiff what is alleged to have occurred in a previous assignment in Ms. Peo's Music class, where it is alleged he played uncensored music and used the "n" word. According to the handbook, this is to say that Ms. Poplin was supposed to have conferred with him regarding "listening to uncensored 'music' and using the 'n' word (which did not occur regardless of what anyone may have written regarding the matter), as well as, all of the other evaluative indicators marked as "Below Standard." This did not occur in violation of Plaintiff's due right and school board procedure.

3) On page 10 of the Defendants' "Memorandum in Support of Motion to Dismiss," it is stated "Plaintiff failed to allege any deprivation on any constitutionally protected interest." This motion should be Denied, as Plaintiff has shown through various expository exhibits just how a "property" interest and/or "liberty" interest was denied him by Pitt County Schools without due process of law; firstly, when he was injudiciously banned from working at E.B. Aycock Middle School, which deprived him of a significant number of monetary assignments that he would have normally fulfilled at that school. E.B. Aycock was on of the main schools Plaintiff subbed at most often. Although sporadic, these assignments were on a continual basis; and therefore, a property interest, as the Plaintiff has worked as a substitute teacher for Pitt County Schools for eight

straight years and counting.. And secondly, when those disparaging evaluation forms from Ms. Poplin and Ms. Catherine Kirkland (who will later be discussed further), were placed in his file by Mr. Buck (all named defendants), this deprived him of the liberty interest of the right to a good reputation. Plaintiff understands that procedural due process rules are meant to protect persons, not from the deprivations, but from the mistaken or unjustified deprivation of life, liberty, or property. Thus, the required elements of due process are those that "minimize substantively unfair or mistaken deprivations" by enabling persons to contest the basis upon which a state proposes to deprive them of protected interest. In this case, that did not occur. See Ballard v. Hunter, 204 U.S. 241, 255 (1907); Palmer v. McMahon, 133 U.S. 660, 668, (1890). As according to Sylvia Development Corp. v. Calvert County, Md., 48 F.3d 810 (4th Cir. 1995), Plaintiff has shown how he has been denied a "liberty" and/or "property" interest of which Pitt County Schools/Board of Education has deprived him without due process of law.

    The United States Supreme Court case of Cleveland Board of Education v. Loudermill is the leading case involving the question of what process is due under the Constitution. This case provides that a tenured teacher must be given oral or written notice of the dismissal and the charges against him or her, an explanation of the EVIDENCE obtained by the employer, and an opportunity for a fair and meaningful hearing. While the text of the due process is extremely general, the fact that it appears twice makes clear that it states a central proposition. Thus, it is not always enough for the government just to act in accordance with whatever law there may happen to be. **Citizens may also be entitled to have the government observe and offer fair procedures, whether or not those**

**procedures have been provided for in the law on the basis of which it is acting. Action denying the process that is "due" would be unconstitutional "in each case upon individual grounds" on a case by case basis.**

## Argument

On page 12 of Defendants' "Memorandum in Support to Dismiss," it is argued that Plaintiff "has no constitutional protected interest in his job as a substitute teacher, and thus no right to due process before deprivation of that job" citing Board of Regents of the State Colleges v. Roth, 408 U.S. 564 (1972) (holding that a non-tenure teacher has no constitutionality protected property interest in his job, and was therefore, not entitled to due process). To the contrary, however, as it is found in that case, the Supreme Court has held that the Fourteenth Amendment does not require an opportunity for a hearing prior to the non-renewal of a non-tenured state teacher's contract **unless he can show that the non-renewal deprived him an interest in "liberty" or that he had a "property" interest in continued employment, despite the lack of tenure or a formal contract.** Therefore, Defendants' motion to dismiss on the grounds that "a non-tenured teacher has no protected right to due process," should be denied, as Plaintiff has explained in the previous paragraph that he has a property interest in continued employment with all of Pitt County Schools with an implied contract by which he is evaluated and assigned every year as a substitute teacher contingent upon satisfactory work performances. An employment contract, once established, guarantees a legal property interest, which can be denied only through the due process of law.

Therefore, as according to the required criteria dictated in Kurtzmann v. Applied

Industries, 347 N.C. 329, 331, 493 S. E.2d 420, 422 (1997), Plaintiff has demonstrated a contractual agreement establishing a definite term of employment and is henceforth entitled to some kind of process---that the lack of a contractual or tenure right taken alone does not defeat his claim. At times, the Court has also stressed the dignitary importance of procedural rights, the worth of being able to defend one's interests even if one cannot change the results. See Fuentes v. Shevin, 407 U.S. 67, 81 (1972).

## Response to Defendants' Answer Regarding Plaintiff's Title V11 Discrimination Claim

Starting on page 14 of Defendant's Answer, it is alleged that Plaintiff fails to adequately allege **any** of the essential elements of a prima facie claim regarding his tort claim of discrimination on the basis of sex and race with regards to his unfair treatment by Jennifer Poplin (Principal of E.B. Aycock), when she denied him due process in submitting a defamatory evaluation on him without conferring with him first the defamatory contents therein. Plaintiff filed the tort claim of discrimination on the basis of sex and race because there are 10 to 15 times more female substitutes than male substitutes employed by Pitt County Schools, some of whom were given due process before negative evaluation were submitted on them by principals requesting their names be taken of their school's list for substitute teachers. Regarding the race aspect of this tort claim, Plaintiff filed the discrimination charge on basis of race because Ms. Poplin, who happens to be white, claimed other teachers (at least 2 and both white), Ms. Barnes (an English Teacher) and Mr. Holt (now an Assistant Principal at another school), complained about Plaintiff the year before November 18, 2011 is why she denied Plaintiff

due process by having her black Assistant Principal, Stan Adams, notify him that he was no longer allowed to sub at her school because two students alleged in writing that he used a racial overtone in identifying a "Mexican" student. After speaking with her (Ms. Poplin) explaining what happened regarding the Mexican student, she saw the justification in Plaintiff's action and told him she would call him on November 21, 2012 to let him know whether or not she would send in an evaluation requesting he not return to her school, but did not, and instead submitted an evaluation with far worse allegations than what was discussed with him on November 18, 2011 regarding the Mexican" student. And for the Director of Personnel, Glen Buck, to go along with her in this due process violation, made it obvious that Plaintiff was being discriminated against on the basis of race, as they are all white administrators for Pitt County Schools.

After finding out weeks later what Ms Poplin had done because she didn't call Plaintiff like she said she would, Plaintiff's submitted a rebuttal letter to her that was also placed in his personnel file (exhibit A in complaint) explaining why he felt he was being treated unfairly not knowing that she had also put on the evaluation that he used the "n" word and played uncensored music in a previous assignment that was never brought to Plaintiff's attention, in spite of his constantly inquiring about the evaluation to central office and being told that the form had not been submitted. This went on for weeks until he was finally told by Carla Lee (now retired) that the form had indeed been sent in by Ms. Poplin on or about November 21, 2011, the date that Ms. Poplin was supposed to have called the Plaintiff.

It is policy procedure that the evaluation be sent to the sub whose name is being removed from the sub's list for that particular school, which did not occur in Plaintiff's

case, not only because the principal had not spoken to him about what was on the evaluation as indicated in her not checking "Yes" on the evaluative indicator that asked if principal had spoken with the substitute regarding the above incidents and the "below standard" ratings, but because he is a black male as female substitutes are always given the opportunity to respond to any allegations or concerns indicated on the evaluation, which is also sent to them within days after the conference. Plaintiff feels he was also discriminated against on the basis of his race because all white substitutes whose name has been removed from a sub's list for any school was done within policy procedure. Additionally, disproportionately more black male substitutes have been removed from a school's sub list than whites; even though, they make up less than 5 percent of substitutes hired by Pitt County Schools. This sort of treatment of black classified employees of Pitt County Schools is becoming to be a pattern. Earlier this year, there was a write-up in the newspaper regarding how the courts coerced Pitt County Schools to give jobs back to a number of black classified employees. See copy of newspaper article marked as (exhibit II) to be submitted into evidence. There is a white male substitute by the name of Mr. Collins (first name unknown), who is presently employed with Pitt County Schools, and who was banned from a school but no evaluation was done on him at all---clearly a discriminatory act considering the unjustifiably damaging evaluation submitted on Plaintiff by two white principals, both denying him fair treatment as dictated by the due process clause of the Fourteenth Amendment to the Constitution.

## Plaintiff's Title VII Retaliation Claim

On page 15 of defendants' answer, it is stated Plaintiff failed to allege the essential

elements of a Title V11 Retaliation claim, which is proven otherwise. The defendants' point out three elements of such a claim Plaintiff must prove in order to establish a "prima facie" case of retaliation citing, Ross v. Communications Satellite Corp.759 F.2d 355, 365 (4th cir. 1985) and King Rumsfeld 328 F.3d 145, 151-52 (4th cir. 2003) and Lettier v. Equant, Inc., 478 F. 3d 640n. 2 (4th cir. 2007).

As cited by the Defendants, Plaintiff must show the following:

> **1) That the alleged retaliation would not have occurred, but for the protected conduct. It is obvious in this case that one of the defendants in central office, Glen Buck, would not have signed-off on a request by defendant, Catherine Kirkland, for the reasons she gives on the evaluation (exhibit J in Addendum to Complaint) she submitted requesting I, the Plaintiff, not return to the school because, as stated on the evaluation, she didn't like Plaintiff's response to her suggestion that he not work at the school because he was too late getting there on September 13, 2012, although he had received a late assignment call from the Aesop System authorizing him to fill the substitute's assignment for an Art class at her school, Eastern Elementary. The specific reason she gives is because she thought Plaintiff's tone and one remark by him was unprofessional; hence, on the evaluation, she marked as "Below "Standard" the evaluative indicator regarding his "maintaining' a profession demeanor;" even though, he worked the a full day and encountered no incident in which it was reported or observed by faculty or staff that he did not "maintained" a**

professional demeanor. She also marked as "Below Standard" the evaluative indicator regarding his "arriving and leaving the school at designated times" because Plaintiff asked to leave at the end of the day during a planning period in which he had no class, and was giving permission to do so by her Assistant Principal, who checked with her first. She even explains in full detail on the evaluation that Plaintiff was given permission to leave, yet she defamed his character and marked that indicator as "below standard." This within itself shows that her intent was of a malicious and retaliatory nature. She also marked as "Below Standard" the evaluative indicator regarding "receiving favorable report from school personnel," when there is absolutely nothing to support this claim. Plaintiff covered a number of Art classes that day at the school and had no incident by any school personnel regarding any negative report concerning the Plaintiff's attitude or work performance. Hence, the evaluation submitted by Catherine Kirkland to request the Plaintiff not return to the school is unfounded and has no basis in merit and should not have been allowed by Glen Buck and the administrators in central office. This evaluation and request is clearly supports Plaintiff's Title V11 Retaliation Claim.

2) That his employer took an adverse action. This is proven in the fact that Plaintiff was denied a liberty interest when his reputation by way of the evaluation was injudiciously stained with absolutely no basis in

merit. Plaintiff was denied a property interest when he was banned from subbing at Eastern Elementary for reasons of malice and oppression and in retaliation for his having filed, only a month or so earlier, a tort claim against Pitt county schools and defendants for similar reasons.

3) That there was a causal link between the two events. This is proven in Plaintiff's addendum to his initial complaint in that for the same reasons he filed the initial complaint (protected activity), the defendant(s) Catherine Kirkland and Glen Buck, again injudiciously violated Plaintiff's due process right in submitting a defamatory evaluation on Plaintiff with no basis in merit so as to retaliate against him for his having filed a tort claim against them as administrators of their employer, Pitt County Schools, five weeks or so earlier. This clearly is in violation of Title V11 Retaliation. Defendant Glen Buck clearly was aware of the protective activity initiated by Plaintiff before signing off on this disparaging evaluation that Ms. Kirkland submitted requesting he be denied again a property interest of being able to work at Eastern Elementary and a liberty interest of not being labeled as a substitute who "does not maintain a professional demeanor, does not arrive or leave the work site at designated times and does not receive favorable reports from school personnel;" all of which are unfounded and retaliatory in nature and should not have been allowed by Glenn Buck and the administrators in central office.

In the cited case of Ross v. Communication Satellite Corp., the Defendants alleged the plaintiff, Ross, filed a bogus retaliation claim against them (his employer) as a response to his getting an unfavorable evaluation that was later proven by three different agencies, (the EEOC, ESA, and the Employment Security Administration Appeal Referee) to be legitimate and that Ross was eventually discharged from his job for misconduct. The Appeal Referee stated that Ross even failed to take advantage of an arrangement by his employer to remedy the problem that eventually led to his termination. To the contrary, however, Plaintiff in this case has shown how his employer was engaging in illegal activity against him and gave them (Pitt County Schools' administrators) every opportunity to remedy his concerns before bringing suit, but to no avail, as they persistently denied his aforementioned constitutional rights fraudulently, maliciously and oppressively fulfilling all the criteria for punitive damages. See Civil Code Section 3294, subdivision (a), where it is maintained that "in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, the plaintiff, in additional to actual damages, may recover damages for the sake of example and by way of punishing the defendant." This is why Plaintiff has asked in his Addendum to the Complaint an additional one-hundred-fifty thousand dollars.

In the cited case of King v. Rumsfeld, the plaintiff therein, an employee (Ross), too, was found on a number of occasions and within only a two-year probationary period to have been observed by his superiors and co-workers demonstrating a belligerent attitude and engaging in inadequate work performances. To the contrary, Plaintiff in this case has

never been observed by supervisors or co-workers demonstrating a belligerent attitude or engaging in an such activity that would warrant a denial of any property or liberty interest by his employer. Additionally, King was given an opportunity to respond to all reports of inadequacies regarding his work performances by his superiors, but not Plaintiff in this case, especially when Catherine Kirkland submitted an evaluation on him that was ambiguously double-standard and had no basis in merit and totally untruthful with regards to her stating she had talked with him regarding the issues therein, a requirement by school board policy.

On pages 16 to 20 of the Defendants answer, Counsel for the Defendants continues to refer to the E.B. Aycock incident in defending against Plaintiff Title V11 Retaliation claim. It must be made clear here that Plaintiff did not file a Title V11 Retaliation claim against the principal of E.B. Aycock of Pitt county Schools, but against Catherine Kirkland of Eastern Elementary in or about the second week of October, 2012. Not once does counsel for the Defendants answer this charge that was file in the form of an Addendum to the original complaint.

On page 22 of the Defendants' Answer, it is asserted that in reviewing the legal sufficiency of a complaint that the court cannot assume facts or allegations not contained in the complaint, citing Estate Const. Co. v. Miller & Smith Co., 14 F.3d 213, 220-221 (4th cir. 1994). This citation has nothing to do with Plaintiff's complaint as he has been very explicit in the tort claims filed against Pitt County Schools et.. Al and has even submitted exhibits as evidence in supporting his tort claims of violations of the due process clause to the Fourteenth amendment, defamation of character and Title V11 Civil Rights Act of 1964 on the basis of sex, race and retaliation, which is fully detailed in

Plaintiff's original complaint the "Addendum to Add Another Defendant, Additional Charges and Relief," as well as in this Memorandum.

On pages 23 to 25, it is asserted that Plaintiff has no basis for federal jurisdiction even if the Court elects to exercise Supplemental Jurisdiction regarding the defamation of character claim. The defamation of character claims in Plaintiff's complaint clearly meet the criteria for punitive damages in that when Ms. Poplin, principal of E.B. Aycock, submitted an evaluation on Plaintiff stating he used the "n" word (meaning 'nigger') to or about a student during class, she should have known that such a thing probably did not occur considering Plaintiff's track record as a substitute, as well as, his playing uncensored music. For Ms. Poplin, as well as, central office, to have placed these untrue and defaming statements in Plaintiff's personnel file is a violation of public policy to say the least. The injury the aforementioned defamatory statements has caused Plaintiff is much psychological pain and suffering, as Plaintiff has heard from a co-worker that he is considered to be an unprofessional racist in central office. These statements were placed in Plaintiff's file before consulting with him to see if such things were so or to at least allow him an opportunity to respond to the allegations. The procedure by which those untrue defamatory statements were placed in Plaintiff's personnel file, as mentioned in Plaintiff complaint, addendum to the complaint and this memorandum, clearly shows how his constitutional rights were blatantly violated with regards to due process of law, Title V11 Civil rights Act of 1964 on the basis of sex, race and retaliation, as well as defamation of his character.

This is to petition the Court to make right the wrong Plaintiff has suffered by these blatantly punitive violations and grant him the relief sought.

Sincerely,

*[signature: Johnnie Johnson]*

Johnnie Johnson (pro se)
320 Line avenue, Apt. a
Greenville, North Carolina 27834
Telephone: 252-565-8335
Cell:      252-258-8741


Cc: USDC

    Tharrington Smith, L.L.P.
    209 Fayetteville Street
    Post office Box 1151
    Raleigh, North Carolina 27602-1151

Plaintiff's original complaint the "Addendum to Add Another Defendant, Additional Charges and Relief," as well as in this Memorandum.

On pages 23 to 25, it is asserted that Plaintiff has no basis for federal jurisdiction even if the Court elects to exercise Supplemental Jurisdiction regarding the defamation of character claim. The defamation of character claims in Plaintiff's complaint clearly meet the criteria for punitive damages in that when Ms. Poplin, principal of E.B. Aycock, submitted an evaluation on Plaintiff stating he used the "n" word (meaning 'nigger') to or about a student during class, she should have known that such a thing probably did not occur considering Plaintiff's track record as a substitute, as well as, his playing uncensored music. For Ms. Poplin, as well as, central office, to have placed these untrue and defaming statements in Plaintiff's personnel file is a violation of public policy to say the least. The injury the aforementioned defamatory statements has caused Plaintiff is much psychological pain and suffering, as Plaintiff has heard from a co-worker that he is considered to be an unprofessional racist in central office. These statements were placed in Plaintiff's file before consulting with him to see if such things were so or to at least allow him an opportunity to respond to the allegations. The procedure by which those untrue defamatory statements were placed in Plaintiff's personnel file, as mentioned in Plaintiff complaint, addendum to the complaint and this memorandum, clearly shows how his constitutional rights were blatantly violated with regards to due process of law, Title V11 Civil rights Act of 1964 on the basis of sex, race and retaliation, as well as defamation of his character.

This is to petition the Court to make right the wrong Plaintiff has suffered by these blatantly punitive violations and grant him the relief sought.

Sincerely,

*Johnnie Johnson* (signature)

Johnnie Johnson (pro se)
320 Line avenue, Apt. a
Greenville, North Carolina 27834
Telephone: 252-565-8335
Cell: 252-258-8741


Cc: USDC

    Tharrington Smith, L.L.P.
    209 Fayetteville Street
    Post office Box 1151
    Raleigh, North Carolina 27602-1151